**IN THE UNITED DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | | |
|---|---|---|
| **NTP, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No.:** |
| **v.** | ) | 3-07C D7CV551 |
| | ) | **Jury Trial Demanded** |
| **SPRINT NEXTEL CORP.,** | ) | |
| | ) | |
| **Defendant** | ) | |

NTP, Inc. v. Sprint Nextel Corp.

Doc. 1

### COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff NTP, Inc. ("NTP" or "Plaintiff"), by and through its attorneys, hereby demands a jury trial and complains of Defendant, Sprint Nextel Corporation ("Sprint" or "Defendant") as follows:

### NATURE OF THE ACTION AND THE PARTIES

1.      This is a civil action for the infringement of United States Patents Nos. 5,438,611 ("the '611 patent") (attached as Exhibit A); 5,479,472 ("the '472 patent") (attached as Exhibit B); 5,436,960 ("the '960 patent") (attached as Exhibit C); 5,625,670 ("the '670 patent") (attached as Exhibit D); 5,819,172 ("the '172 patent") (attached as Exhibit E); 6,067,451 ("the '451 patent") (attached as Exhibit F); 6,317,592 ("the '592 patent") (attached as Exhibit G); and 5,631,946 ("the '946 patent") (attached as Exhibit H) (collectively, "the Campana Patents").

2.      The United States District Court for the Eastern District of Virginia, Richmond Division, is the appropriate venue for this action pursuant to 28 U.S.C. § 1391(e) because NTP resides in the Richmond Division and no real property is involved in this action.

3.      Plaintiff NTP owns the Campana Patents relating to the use of RF (wireless) communications in electronic mail systems, as further described herein.

4.    Defendant Sprint Nextel Corporation ("Sprint") is a Kansas corporation with its principal place of business at 2001 Edmund Halley Dr., Reston, VA 20191. Sprint operates an RF information transmission network, is a nationwide provider of digital wireless voice, electronic mail, and data services, and is a retailer of wireless handheld devices and associated software applications for use with electronic mail systems.

## JURISDICTION AND VENUE

5.    Because this action arises under the Patent Laws of the United States, 35. U.S.C. § 1 *et seq.* and specifically 35 U.S.C. § 271, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338.

6.    This Court has personal jurisdiction over defendant Sprint under Va. Code Ann. § 8.01-3211 because Sprint has its principal place of business in this District, transacts business regularly in Virginia, and has caused injury to Plaintiff in this District. Moreover, this lawsuit arises out of the infringing acts committed by the Defendant in this District. Venue in this Court is proper, pursuant to 28 U.S.C. § 1391(d), 28 U.S.C. § 1391(b), 28 U.S.C. § 1400(b) and Local Rule 3(C).

## THE CAMPANA PATENTS

7.    As the use of electronic mail systems became more popular, users became increasingly reliant upon access to their email. At the same time as the popularity of email exploded, the use of mobile personal computers, such as might fit in a briefcase or a pocket, became more widespread — particularly by business travelers. The combination of reliance upon email as a primary means of communication and the reliance upon mobile computers created a problem for travelers: staying in contact with their email while they and their computers were away from their usual workplace. Initially, travelers attempted to solve this

-2-

problem by: (a) equipping their mobile computers with telephone modems, (b) periodically connecting the modems to telephone jacks with wires, and (c) dialing into computers connected to the email system in their usual workplace. This solution was awkward in that it among other things required the traveler to locate a usable telephone jack compatible with the type of modem installed in the mobile computer. Additionally, such a solution required the user to remember to periodically initiate action attempting to request email messages from his usual workplace computer to the mobile computer — even without knowing whether any email messages were waiting or not. Other attempted solutions had a host of problems.

8.     To satisfy the need for remote access to email and other data and to overcome the shortcomings of prior systems, there was a need for a system that could operate independently of the wired modem restrictions and provide for regular email updates. This need was filled by the Campana Patents which integrate electronic mail systems with RF wireless communications networks. The inventions enable, for example, a message originating in an electronic mail system to be transmitted not only by wireline but also via RF, in which case it is received by a user and stored in his mobile RF receiver.

9.     Various of the claims of the patents-in-suit relate to a system for transmitting originated information from one of a plurality of originating processors in an electronic mail system to at least one of a plurality of destination processors in the electronic mail system or another electronic mail system. The system includes an RF information transmission network for transmitting the originated information to at least one RF receiver which transfers the originated information to the one destination processor, at least one interface which connects the electronic mail system to the RF transmission network and transmits originated information received from the electronic mail system to the RF information transmission network. The

-3-

originated information is transmitted to a receiving interface by the electronic mail system in response to an address of the receiving interface, and the originated information is transmitted from this receiving interface to the RF information transmission network with an address of the destination processor to receive the information. The electronic mail system can also transmit other originated information within the electronic mail system through a wireline such as the telephone network.

10.    Various of the claims of the patents-in-suit also relate to a system for transmitting originated information from one of a plurality of originating processors in an electronic mail system to at least one of a plurality of destination processors in the electronic mail system or another electronic mail system. The system includes an RF information transmission network for transmitting the originated information to at least one RF receiver which transfers the originated information to the one destination processor; at least one interface which is coupled to the electronic mail system containing the plurality of originating processors and to the RF information transmission network. The interface transmits the originated information received from the electronic mail system containing the plurality of originating processors to the RF information transmission network. The system further includes at least one additional processor which is coupled to at least one interface and which transmits other originated information to the interface. The interface receives the other originated information from the one additional processor and adds RF network information used by the RF information transmission network during transmission of the other originated information to the one RF receiver receiving the other originated information.

11.    Various of the claims of the patents-in-suit also relate to a system for connecting a plurality of email systems each of which transmits information from one of a plurality of

-4-

originating processors to at least one of a plurality of destination processors. The system includes at least one interface which is coupled to each of the plurality of electronic mail systems and which receives information originating from an originating processor in one of the electronic mail systems for transmission to a destination processor in another electronic mail system. The system also includes an RF information transmission network, coupled to the interface, for transmitting stored information received from the interface which originated from an originating processor in one electronic mail system by RF transmission to at least one RF receiver which then relays the information to a destination processor within the another electronic mail system.

12.    The '611 patent, entitled "Electronic Mail System With RF Communications To Mobile Processors Originating From Outside Of The Electronic Mail System And Method Of Operation Thereof," issued on August 1, 1995. The inventors of the '611 patent are Thomas J. Campana, Jr., Michael P. Ponschke, and Gary F. Thelen. The '611 patent is now, and has been at all times since its date of issue, valid and enforceable. NTP is the assignee and sole owner of the '611 patent, and the sole owner of the right to sue and to recover for any infringement of that patent.

13.    The '472 patent, entitled "System For Interconnecting Electronic Mail Systems By RF Communications And Method Of Operation Thereof," issued on December 26, 1995. The inventors of the '472 patent are Thomas J. Campana, Jr., Michael P. Ponschke, and Gary F. Thelen. The '472 patent is now, and has been at all times since its date of issue, valid and enforceable. NTP is the assignee and sole owner of the '472 patent, and the sole owner of the right to sue and to recover for any infringement of that patent.

14.    The '960 patent, entitled "Electronic Mail System With RF Communications To Mobile Processors And Method Of Operation Thereof," issued on July 25, 1995. The inventors

of the '960 patent are Thomas J. Campana, Jr., Michael P. Ponschke, and Gary F. Thelen. The '960 patent is now, and has been at all times since its date of issue, valid and enforceable. NTP is the assignee and sole owner of the '960 patent, and the sole owner of the right to sue and to recover for any infringement of that patent.

15.    The '670 patent, entitled "Electronic Mail System With RF Communications To Mobile Processors," issued on April 29, 1997. The inventors of the '670 patent are Thomas J. Campana, Jr., Michael P. Ponschke, and Gary F. Thelen. The '670 patent is now, and has been at all times since its date of issue, valid and enforceable. NTP is the assignee and sole owner of the '670 patent, and the sole owner of the right to sue and to recover for any infringement of that patent.

16.    The '172 patent, entitled "Electronic Mail System With RF Communications To Mobile Radios," issued on October 6, 1998. The inventors of the '172 patent are Thomas J. Campana, Jr., Michael P. Ponschke, and Gary F. Thelen. The '172 patent is now, and has been at all times since its date of issue, valid and enforceable. NTP is the assignee and sole owner of the '172 patent, and the sole owner of the right to sue and to recover for any infringement of that patent.

17.    The '451 patent, entitled "Electronic Mail System With RF Communications To Mobile Processors," issued on May 23, 2000. The inventors of the '451 patent are Thomas J. Campana, Jr., Michael P. Ponschke, and Gary F. Thelen. The '451 patent is now, and has been at all times since its date of issue, valid and enforceable. NTP is the assignee and sole owner of the '451 patent, and the sole owner of the right to sue and to recover for any infringement of that patent.

18.     The '592 patent, entitled "Electronic Mail System With RF Communications To Mobile Processors," issued on November 13, 2001. The inventors of the '592 patent are Thomas J. Campana, Jr., Michael P. Ponschke, and Gary F. Thelen. The '592 patent is now, and has been at all times since its date of issue, valid and enforceable. NTP is the assignee and sole owner of the '592 patent and the sole owner of the right to sue and to recover for any infringement of that patent.

19.     The '946 patent, entitled "System For Transferring Information From a RF Receiver to a Processor Under Control of a Program Stored by the Processor and Method of Operation Thereof," issued on May 20, 1997. The inventors of the '946 patent are Thomas J. Campana, Jr., Michael P. Ponschke and Gary F. Thelen. The '946 patent is now, and has been at all times since its date of issue, valid and enforceable. NTP is the assignee and sole owner of the '946 patent, and the sole owner of the right to sue and recover for any infringement of that patent.

**PRIOR LITIGATION INVOLVING THE PATENTS-IN-SUIT**

20.     Five of the patents-in-suit were the subject of a prior patent infringement action filed in this Court by NTP against Research-in-Motion, Ltd. ("RIM"), on November 13, 2001, Civil Action No. 3:01CV767 ("the RIM Action").

21.     In the course of the RIM Action, RIM extensively litigated the validity and enforceability of the five patents at issue, as well as the issue of RIM's infringement. The issues of infringement and validity were tried in a thirteen-day jury trial in November 2002, before the Honorable James R. Spencer, District Judge.

22.     The jury returned a verdict finding that RIM willfully infringed all of the claims of the patents that were asserted at trial. The jury found that all of the asserted claims were valid

-7-

and the claims were not anticipated or rendered obvious under §§ 102 and/or 103 of the Patent Act.

23.    Following the jury verdict, RIM moved the Court for JMOL or, in the alternative, for a new trial. The trial court denied both motions by Order dated May 23, 2003.

24.    RIM appealed the judgment to the United States Court of Appeals for the Federal Circuit. The Federal Circuit concluded that the District Court correctly found infringement and correctly denied RIM's motion for judgment as a matter of law. The Federal Circuit also affirmed the district court's denial of RIM's JMOL on the validity issues, agreeing with the District Court that RIM's "conclusory evidence is hardly enough to meet RIM's high burden of clear and convincing evidence with respect to anticipation and obviousness."

25.    After the jury verdict in the RIM Action, the United States Patent and Trademark Office ("PTO") initiated reexamination of the '946, '670, '172, '451, '592 and '472 Patents and granted RIM's petitions for reexamination of the '960 and '611 Patents. RIM subsequently filed requests for reexamination of the other patents-in-suit.

26.    The reexamination proceedings are still pending before the PTO.

27.    The RIM Action resulted in RIM taking a license to the Campana patents for undisclosed terms.

28.    On September 20, 2006, Oren Tavory filed a Compliant against NTP, Inc., styled *Oren Tavory v. NTP, Inc.*, Civil Action No. 3:06CV628 (E.D. Va.) (the "Tavory Action") seeking to be named as a co-inventor of seven of the eight Campana Patents at issue here and asserting claims for copyright infringement and unjust enrichment.

29.    By Order dated November 8, 2006, the Tavory Action was transferred to the Richmond Division and assigned to the Honorable James R. Spencer, District Judge.

-8-

30.    By Order dated December 26, 2006, the Court dismissed the unjust enrichment count for failure to state a claim.

31.    By Order dated July 17, 2007, the Court granted NTP's motion for summary judgment dismissing the remaining claims in the Tavory Action finding that Mr. Tavory's claim of copyright was fraudulent and that "there is not credible evidence that can be offered establishing that Tavory participated in the conception of the wireless email systems, nor is there credible evidence that can be offered to corroborate his claim."

32.    Currently pending before this Court is a patent infringement action filed by NTP against Palm, Inc. ("Palm") on November 6, 2006, Civil Action No. 3:06CV836 ("the Palm Action"). Seven of the patents at issue here are also at issue in the Palm Action.

33.    The Palm Action was stayed pending completion of the PTO reexamination proceedings by Order entered March 22, 2007 by the Honorable James R. Spencer, District Judge.

## SPRINT'S INFRINGING ACTIVITIES AND NOTICE THEREOF

34.    Defendant has engaged in activities within the Richmond Division of the Eastern District of Virginia ("Richmond Division") constituting infringement, inducement of infringement and contributing to infringement of the Campana patents.  Such activities include: (1) sales and distribution of infringing devices, software and services through corporate-owned retail stores located in the Richmond Division to customers in the Richmond Division for use in the Richmond Division; (2) sales and distribution of infringing devices, software and services through other retail stores located in the Richmond Division, knowingly for resale to customers for use in the Richmond Division; (3) direct solicitation of sales and actual sales of infringing devices, software and services to customers in the Richmond Division, for use in the Richmond

-9-

Division, via the Defendant's online Web sites including but not limited to
http://www.sprint.com and http://www.nextel.com; (4) knowingly communicating with
customers located in the Richmond Division through telephone and online contacts for technical
support of the infringing use of products and services sold by the Defendant; (5) conducting
marketing, promotion, and advertising activities in the Richmond Division for infringing
products and services, such activities constituting offers to sell directed at customers in the
Richmond Division; (6) providing instructions, support and services to customers who are
infringing the Campana Patents in the Richmond Division; and (7) engaging in licensing
agreements with companies located in the Richmond Division for the marketing, advertising,
sales, support and use of products and services that infringe the Campana patents.

35.    On or about April 12, 1999, Plaintiff's legal representative notified Defendant of
its ownership of the '946, '670, '472, '611, '960, and '172 patents and at least one pending
application, which issued as the '451 patent. In Plaintiff's notice to Defendant, Plaintiff enclosed
copies of the then-issued patents and specified some examples of claims in those patents that
were relevant to Defendant's products and services. Plaintiff offered to license the issued patents
and pending applications. On or about July 13, 1999, Plaintiff's legal representative again
notified Defendant of its ownership of the Campana patents and again offered to license the
issued patents and pending application. Defendant therefore has had actual knowledge of the
patents-in-suit and their relevance to its products and services since no later than the date it
received the April 12, 1999 letter from NTP. Defendant has continued to infringe the patents-in-
suit, despite its knowledge of them and in reckless disregard for NTP's patent rights. On
information and belief, Sprint has direct knowledge from press reports and independent
investigation of the merits underlying NTP's patent rights from its knowledge of the disposition

of NTP's patent infringement suit against RIM. Further, Sprint is aware of the status of the pending reexaminations as such information is publicly available. Sprint is aware that the Campana Patents are presumed valid and remain enforceable during the pendency of the reexaminations. And, on information and belief, Sprint is aware through published press reports that the reexaminations were instituted because of political pressure on the PTO and are without merit. Sprint's continued infringement with its present knowledge of NTP's patent rights and their relevance to Defendant's operations is reckless and willful.

36.     Hardware manufacturers whose devices are sold by Sprint to support Sprint's wireless email services have taken licenses to the patents-in-suit. Such licenses provide further evidence that Sprint knowingly, recklessly and willfully infringes the patents-in-suit. In particular, Good Technology is licensed under the patents-in-suit. Sprint sells wireless phone systems including Good Technology's mobile messaging application, which is licensed under the patents-in-suit. Such systems are used in connection with wireless email services provided by Sprint. Upon information and belief, Sprint is aware that its sale and offering for sale of services for use with such licensed products is covered by NTP's patents. However, Sprint, in reckless disregard of those rights, continues its infringing activities.

37.     NTP has been irreparably harmed by the Defendant's infringement of its valuable patent rights. Moreover, Defendant's unauthorized, infringing use of NTP's patented systems and methods has threatened the value of this intellectual property because Defendant's conduct results in NTP's loss of its lawful patent rights to exclude others from making, using, selling, offering to sell and/or importing the patented inventions.

38.     Defendant's disregard for NTP's property rights similarly threatens NTP's relationships with its licensees and potential licensees of this intellectual property. Defendant

-11-

will derive a competitive advantage over any of NTP's existing and future licensees from using NTP's patented technology without paying compensation for such use. Accordingly, unless and until Defendant 's continued acts of infringement are enjoined, NTP will suffer further irreparable harm for which there is no adequate remedy at law.

### FIRST CAUSE OF ACTION — SPRINT'S INFRINGEMENT OF U.S. PAT. NO. 5,438,611

39.    Paragraphs 1-38 are incorporated by reference as if fully restated herein.

40.    Defendant makes, uses, sells and offers to sell, and/or imports into the United States for subsequent use and sale products, services, methods or processes that infringe, directly and/or indirectly, or which employ systems, components, and/or steps that make use of systems or processors that infringe, directly and/or indirectly, one or more claims of the '611 patent.

41.    Defendant has been, and is now, infringing, inducing the infringement of, and contributing to the infringement of the '611 patent by making, using, selling, offering to sell and importing into the United States products, including wireless devices such as mobile email-ready telephones and other wireless email-ready devices, the use of which is covered by one or more claims of the '611 patent.

42.    Defendant has been, and is now, infringing, inducing the infringement of, and contributing to the infringement of the '611 patent by making, using, selling, offering to sell and importing into the United States software applications, including the Defendant's Mobile Email application, the use of which is covered by one or more claims of the '611 patent.

43.    Defendant has been, and is now, infringing, inducing the infringement of, and contributing to the infringement of the '611 patent by making, using, selling, offering to sell and importing into the United States wireless email and data services accessed through wireless

-12-

devices executing the Mobile Email application, which services are covered by one or more claims of the '611 patent.

44.    Defendant has been, and is now, infringing, inducing the infringement of, and contributing to the infringement of the '611 patent by making, using, selling and offering to sell wireless email and data services via its RF information transmission network.

45.    Sprint's continuing acts of infringement constitute willful infringement of the '611 patent.

46.    Sprint's activities infringing the '611 patent have damaged NTP and will continue to cause NTP irreparable harm unless such infringing activities are enjoined by this Court.

### SECOND CAUSE OF ACTION — SPRINT'S INFRINGEMENT OF U.S. PAT. NO. 5,479,472

47.    Paragraphs 1-46 are incorporated by reference as if fully restated herein.

48.    Defendant makes, uses, sells and offers to sell, and/or imports into the United States for subsequent use and sale products, services, methods or processes that infringe, directly and/or indirectly, or which employ systems, components, and/or steps that make use of systems or processors that infringe, directly and/or indirectly, one or more claims of the '472 patent.

49.    Defendant has been, and is now, infringing, inducing the infringement of, and contributing to the infringement of the '472 patent by making, using, selling, offering to sell and importing into the United States products, including wireless devices such as mobile email-ready telephones and other wireless email-ready devices, the use of which is covered by one or more claims of the '472 patent.

50.    Defendant has been, and is now, infringing, inducing the infringement of, and contributing to the infringement of the '472 patent by making, using, selling, offering to sell and

-13-

importing into the United States software applications, including the Defendant's Mobile Email application, the use of which is covered by one or more claims of the '472 patent.

51.    Defendant has been, and is now, infringing, inducing the infringement of, and contributing to the infringement of the '472 patent by making, using, selling, offering to sell and importing into the United States wireless email and data services accessed through wireless devices executing the Mobile Email application, which services are covered by one or more claims of the '472 patent.

52.    Defendant has been, and is now, infringing, inducing the infringement of, and contributing to the infringement of the '472 patent by making, using, selling and offering to sell wireless email and data services via its RF information transmission network.

53.    Sprint's continuing acts of infringement constitute willful infringement of the '472 patent.

54.    Sprint's activities infringing the '472 patent have damaged NTP and will continue to cause NTP irreparable harm unless such infringing activities are enjoined by this Court.

### THIRD CAUSE OF ACTION — SPRINT'S INFRINGEMENT OF U.S. PAT. NO. 5,436,960

55.    Paragraphs 1-54 are incorporated by reference as if fully restated herein.

56.    Defendant makes, uses, sells and offers to sell, and/or imports into the United States for subsequent use and sale products, services, methods or processes that infringe, directly and/or indirectly, or which employ systems, components, and/or steps that make use of systems or processors that infringe, directly and/or indirectly, one or more claims of the '960 patent.

57.    Defendant has been, and is now, infringing, inducing the infringement of, and contributing to the infringement of the '960 patent by making, using, selling, offering to sell and importing into the United States products, including wireless devices such as mobile email-ready

-14-

telephones and other wireless email-ready devices, the use of which is covered by one or more claims of the '960 patent.

58.    Defendant has been, and is now, infringing, inducing the infringement of, and contributing to the infringement of the '960 patent by making, using, selling, offering to sell and importing into the United States software applications, including the Defendant's Mobile Email application, the use of which is covered by one or more claims of the '960 patent.

59.    Defendant has been, and is now, infringing, inducing the infringement of, and contributing to the infringement of the '960 patent by making, using, selling, offering to sell and importing into the United States wireless email and data services accessed through wireless devices executing the Mobile Email application, which services are covered by one or more claims of the '960 patent.

60.    Defendant has been, and is now, infringing, inducing the infringement of, and contributing to the infringement of the '960 patent by making, using, selling and offering to sell wireless email and data services via its RF information transmission network.

61.    Sprint's continuing acts of infringement constitute willful infringement of the '960 patent.

62.    Sprint's activities infringing the '960 patent have damaged NTP and will continue to cause NTP irreparable harm unless such infringing activities are enjoined by this Court.

### FOURTH CAUSE OF ACTION — SPRINT'S INFRINGEMENT
### OF U.S. PAT. NO. 5,625,670

63.    Paragraphs 1-62 are incorporated by reference as if fully restated herein.

64.    Defendant makes, uses, sells and offers to sell, and/or imports into the United States for subsequent use and sale products, services, methods or processes that infringe, directly

and/or indirectly, or which employ systems, components, and/or steps that make use of systems or processors that infringe, directly and/or indirectly, one or more claims of the '670 patent.

65.    Defendant has been, and is now, infringing, inducing the infringement of, and contributing to the infringement of the '670 patent by making, using, selling, offering to sell and importing into the United States products, including wireless devices such as mobile email-ready telephones and other wireless email-ready devices, the use of which is covered by one or more claims of the '611 patent.

66.    Defendant has been, and is now, infringing, inducing the infringement of, and contributing to the infringement of the '670 patent by making, using, selling, offering to sell and importing into the United States software applications, including the Defendant's Mobile Email application, the use of which is covered by one or more claims of the '670 patent.

67.    Defendant has been, and is now, infringing, inducing the infringement of, and contributing to the infringement of the '670 patent by making, using, selling, offering to sell and importing into the United States wireless email and data services accessed through wireless devices executing the Mobile Email application, which services are covered by one or more claims of the '670 patent.

68.    Defendant has been, and is now, infringing, inducing the infringement of, and contributing to the infringement of the '670 patent by making, using, selling and offering to sell wireless email and data services via its RF information transmission network.

69.    Sprint's continuing acts of infringement constitute willful infringement of the '670 patent.

70.    Sprint's activities infringing the '670 patent have damaged NTP and will continue to cause NTP irreparable harm unless such infringing activities are enjoined by this Court.

**FIFTH CAUSE OF ACTION — SPRINT'S INFRINGEMENT
OF U.S. PAT. NO. 5,879,172**

71.    Paragraphs 1-70 are incorporated by reference as if fully restated herein.

72.    Defendant makes, uses, sells and offers to sell, and/or imports into the United States for subsequent use and sale products, services, methods or processes that infringe, directly and/or indirectly, or which employ systems, components, and/or steps that make use of systems or processors that infringe, directly and/or indirectly, one or more claims of the '172 patent.

73.    Defendant has been, and is now, infringing, inducing infringement of, and contributing to the infringement of the '172 patent by making, using, selling, offering to sell and importing into the United States products, including wireless devices such as mobile email-ready telephones and other wireless email-ready devices, the use of which is covered by one or more claims of the '172 patent.

74.    Defendant has been, and is now, infringing, inducing the infringement of, and contributing to the infringement of the '172 patent by making, using, selling, offering to sell and importing into the United States software applications, including the Defendant's Mobile Email application, the use of which is covered by one or more claims of the '172 patent.

75.    Defendant has been, and is now, infringing, inducing the infringement of, and contributing to the infringement of the '172 patent by making, using, selling, offering to sell and importing into the United States wireless email and data services accessed through wireless devices executing the Mobile Email application, which services are covered by one or more claims of the '172 patent.

76.    Defendant has been, and is now, infringing, inducing the infringement of, and contributing to the infringement of the '172 patent by making, using, selling and offering to sell wireless email and data services via its RF information transmission network.

-17-

77.    Sprint's continuing acts of infringement constitute willful infringement of the '172 patent.

78.    Sprint's activities infringing the '172 patent have damaged NTP and will continue to cause NTP irreparable harm unless such infringing activities are enjoined by this Court.

### SIXTH CAUSE OF ACTION — SPRINT'S INFRINGEMENT OF U.S. PAT. NO. 6,067,451

79.    Paragraphs 1-78 are incorporated by reference as if fully restated herein.

80.    Defendant makes, uses, sells and offers to sell, and/or imports into the United States for subsequent use and sale products, services, methods or processes that infringe, directly and/or indirectly, or which employ systems, components, and/or steps that make use of systems or processors that infringe, directly and/or indirectly, one or more claims of the '451 patent.

81.    Defendant has been, and is now, infringing, inducing the infringement of, and contributing to the infringement of the '451 patent by making, using, selling, offering to sell and importing into the United States products, including wireless devices such as mobile email-ready telephones and other wireless email-ready devices, the use of which is covered by one or more claims of the '451 patent.

82.    Defendant has been, and is now, infringing, inducing the infringement of, and contributing to the infringement of the '451 patent by making, using, selling, offering to sell and importing into the United States software applications, including the Defendant's Mobile Email application, the use of which is covered by one or more claims of the '451 patent.

83.    Defendant has been, and is now, infringing, inducing the infringement of, and contributing to the infringement of the '451 patent by making, using, selling, offering to sell and importing into the United States wireless email and data services accessed through wireless

-18-

devices executing the Mobile Email application, which services are covered by one or more claims of the '451 patent.

84.    Defendant has been, and is now, infringing, inducing the infringement of, and contributing to the infringement of the '451 patent by making, using, selling and offering to sell wireless email and data services via its RF information transmission network.

85.    Sprint's continuing acts of infringement constitute willful infringement of the '451 patent.

86.    Sprint's activities infringing the '451 patent have damaged NTP and will continue to cause NTP irreparable harm unless such infringing activities are enjoined by this Court.

## SEVENTH CAUSE OF ACTION — SPRINT'S INFRINGEMENT OF U.S. PAT. NO. 6,317,592

87.    Paragraphs 1-86 are incorporated by reference as if fully restated herein.

88.    Defendant makes, uses, sells and offers to sell, and/or imports into the United States for subsequent use and sale products, services, methods or processes that infringe, directly and/or indirectly, or which employ systems, components, and/or steps that make use of systems or processors that infringe, directly and/or indirectly, one or more claims of the '592 patent.

89.    Defendant has been, and is now, infringing, inducing the infringement of, and contributing to the infringement of the '592 patent by making, using, selling, offering to sell and importing into the United States products, including wireless devices such as mobile email-ready telephones and other wireless email-ready devices, the use of which is covered by one or more claims of the '592 patent.

90.    Defendant has been, and is now, infringing, inducing the infringement of, and contributing to the infringement of the '592 patent by making, using, selling, offering to sell and

-19-

importing into the United States software applications, including the Defendant's Mobile Email application, the use of which is covered by one or more claims of the '592 patent.

91.    Defendant has been, and is now, infringing, inducing the infringement of, and contributing to the infringement of the '592 patent by making, using, selling, offering to sell and importing into the United States wireless email and data services accessed through wireless devices executing the Mobile Email application, which services are covered by one or more claims of the '592 patent.

92.    Defendant has been, and is now, infringing, inducing the infringement of, and contributing to the infringement of the '592 patent by making, using, selling and offering to sell wireless email and data services via its RF information transmission network.

93.    Sprint's continuing acts of infringement constitute willful infringement of the '592 patent.

94.    Sprint's activities infringing the '592 patent have damaged NTP and will continue to cause NTP irreparable harm unless such infringing activities are enjoined by this Court.

### EIGHTH CAUSE OF ACTION - SPRINT'S INFRINGEMENT OF U.S. PAT. NO. 5,631,946

95.    Paragraphs 1 through 94 are incorporated by reference as if fully restated herein.

96.    Defendant makes, uses, sells and offers to sell and/or imports into the United States for subsequent use and sale products, services, methods or processes that infringe, directly and/or indirectly, or which employ systems, components and/or steps that make use of systems or processes that infringe, directly and/or indirectly, one or more claims of the '946 patent.

97.    Defendant has been, and is now, infringing, inducing the infringement of, and contributing to the infringement of the '946 patent by making, using, selling, offering to sell and importing into the United States products, including wireless devices such as mobile email ready

-20-

telephones and/or other wireless email ready devices, the use of which is covered by one or more claims of the '946 patent.

98.     Defendant has been, and is now, infringing, inducing the infringement of, and contributing to the infringement of the '946 patent by making, using, selling, offering to sell and importing into the United States software applications, including the Defendant's Mobile Email application, the use of which is covered by one or more claims of the '946 patent.

99.     Defendant has been, and is now, infringing, inducing the infringement of, and contributing to the infringement of the '946 patent by making, using, selling, offering to sell and importing into the United States wireless email and data services accessed through wireless devices executing the Mobile Email application, which services are covered by one or more claims of the '946 patent.

100.    Defendant has been, and is now, infringing, inducing the infringement of, and contributing to the infringement of one or more claims of the '946 patent by making, using, selling and offering to sell wireless email and data services via its RF information transmission network.

101.    Sprint's continuing acts of infringement constitute willful infringement of the '946 patent.

102.    Sprint's activities infringing the '946 patent have damaged NTP and will continue to cause NTP irreparable harm unless such infringing activities are enjoined by this Court.

## PRAYER FOR RELIEF

WHEREFORE, NTP prays for judgment as follows:

A.     That this Court adjudge and decree that the Campana Patents are infringed by Sprint, that Sprint has induced infringement, and that Sprint has contributed to infringement.

B.     That infringement, inducement of infringement, and contributing to infringement by Sprint has been willful.

C.     That this Court permanently enjoin Sprint and its officers, directors, agents, servants, employees, attorneys, successors, licensees, assigns, and all others in active concert or participation with Sprint, from engaging in any acts that constitute infringement, inducement of infringement, or contributory infringement of the Campana patents.

D.     That this Court order an accounting, including a post-verdict accounting, to determine the damages to be awarded to NTP as a result of Sprint's infringement.

E.     That this Court award NTP damages adequate to compensate for Sprint's infringement, inducement of infringement, and contributory infringement of its patents and any enhanced damages as the Court may see fit under 35 U.S.C. § 284.

F.     That this Court assess pre-judgment and post-judgment interest and costs, together with an award of interest and costs, in accordance with 35 U.S.C. § 284.

G.     That this Court declare this case to be exceptional and direct Sprint to pay NTP its attorney's fees for this action, including those pursuant to 35 U.S.C. § 285.

H.     That NTP be awarded such further relief as this Court may deem just and appropriate.

## JURY DEMAND

NTP demands a trial by jury of all matters to which it is entitled to trial by jury pursuant

to Fed. R. Civ. P. 38.

September __7__, 2007                                    Respectfully submitted,

                                                        NTP, INC.

                                                        By Counsel

_____
Craig T. Merritt (VSB #20281)
R. Braxton Hill IV (VSB #41539)
Nichole Buck Vanderslice (VSB #42637)
CHRISTIAN & BARTON, L.L.P.
909 East Main Street, Suite 1200
Richmond, VA 23219
Telephone: (804) 697-4100
Facsimile: (804) 697-4112

Thomas J. Scott, Jr. (VSB #14197)
Jennifer A. Albert
Phillip D. Mancini (VSB #72322)
GOODWIN PROCTOR LLP
901 New York Ave., N.W.
Washington, DC 20001
Telephone: (202) 346-4000
Facsimile: (202) 346-4444

8319834